## BURTON A. JONAP *v.* JULES SILVER ET AL.
### (2292)

DANNEHY, TESTO and HULL, Js.

Argued November 29, 1983—decision released April 17, 1984

*Robert L. Trowbridge,* with whom, on the brief, was *Jeffrey B. Coppage,* for the appellants-appellees (defendants).

*Barry J. Ward,* with whom was *Gilbert Shasha,* for the appellee-appellant (plaintiff).

HULL, J. In a suit for injurious falsehood and invasion of privacy tried to a jury, a verdict on each of six counts in the complaint was returned for the plaintiff. After the defendants filed a motion to set aside the verdicts and a motion for judgment notwithstanding the verdicts, the court set aside the verdicts concerning two counts for injurious falsehood and rendered judgment for the defendants on those two counts. On appeal,[1] the defendants claim that the court erred in granting judgment for the plaintiff on the invasion of privacy counts. The plaintiff on cross appeal claims that the court erred in granting, in part, the defendants' motion to set aside the verdicts.

The plaintiff, Burton A. Jonap, was the marketing director for the defendant company, Masti-Kure Products Co., Inc., from November, 1970, to January, 1977. The company was a manufacturer in the animal health products field. During the 1970's, this field came under increased scrutiny by the federal Food and Drug Administration (FDA). The defendant, Jules Silver, was the president of the defendant company. In a letter dated November 29, 1976, the defendants requested, allegedly without the plaintiff's consent, that the edi-

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

tor of "Animal Nutrition and Health" magazine publish a letter dated April 1, 1975, which was attributed to the plaintiff. The letter criticized at length certain FDA policies which had seriously interfered with the defendants' marketing efforts. The letter was published in the January/February 1977 edition of the magazine.[2]

The plaintiff brought an action against the defendants claiming that the letter, which was published and attributed to him, had caused damage to his reputation and, as a result, had interfered with his business opportunities and earning capacity. The original complaint filed on October 13, 1977, alleged injurious falsehood. The plaintiff was subsequently allowed, over the defendants' objection, to amend his complaint to allege that the defendants had invaded his privacy both by appropriating his name and by placing him in a false light.[3]

At the conclusion of the evidence, the court, *Schaller, J.,* reserved judgment on the defendants' motion for directed verdict and the case went to the jury. The jury

---

[2] A letter to the editor of "Animal Nutrition and Health" written by Jules Silver and printed in the January/February edition stated in part: "In April last year, an associate of mine wrote to you in more detail on this subject. A copy of this letter is enclosed. At that time, fear of reprisal made us request that you refrain from publishing the letter. But now the situation is so acute that no such consideration exists." The editor replied in the publication in part as follows: "For those interested in this matter, we present herewith the letter we received from your associate last April."

[3] On May 12, 1980, the plaintiff filed a request to amend his complaint to add three counts of invasion of privacy against each defendant. On May 23, 1980, the defendants filed an objection to the request to amend claiming that the additional allegations of invasion of privacy were barred by the applicable statute of limitations. General Statutes § 52-577. On September 8, 1980, the court, *Hendel, J.,* overruled the defendants' objection without comment. Subsequently, on December 2, 1980, the plaintiff filed a second amended complaint, without objection from the defendants. This second amended complaint, in six counts, included counts one and two alleging injurious falsehood, counts three and four alleging invasion of privacy by appropriating the plaintiff's name, and counts five and six alleging invasion of privacy by placing the plaintiff in a false light.

returned three separate verdicts against each defendant. The verdict on counts one and two for injurious falsehood awarded the plaintiff $24,000; the verdict on counts three and four for invasion of privacy for appropriating his name awarded the plaintiff $24,000; and the verdict on counts five and six for invasion of privacy for placing the plaintiff in a false light awarded him $32,000. The defendants filed a motion to set aside the verdicts and a motion for judgment notwithstanding the verdicts. The court set aside the verdicts on counts one and two and rendered judgment for the defendants on those counts.

On appeal, the defendants claim: (1) that the added counts for invasion of privacy by appropriation and for being placed in a false light were barred as a matter of law by the applicable statute of limitations; (2) that the plaintiff failed to prove the essential elements of invasion of privacy by being placed in a false light; (3) that the evidence did not support the awards for damages under both of the invasion of privacy counts in the amended complaint; (4) that the weight of the evidence establishes that the plaintiff consented to the publication of the subject letter; and (5) that the court did not abuse its discretion in rendering judgment notwithstanding the verdict as to counts one and two concerning injurious falsehood.

On cross appeal, the plaintiff claims (1) that the court erred in setting aside the verdicts on the injurious falsehood claims because there was sufficient evidence upon which the jury could base their verdicts; and (2) that the court erred in rendering judgment notwithstanding the verdicts on the counts for injurious falsehood because the court erroneously had excluded substantial evidence.

## I

On September 8, 1980, the court granted the plaintiff's request to amend his complaint to add allegations of invasion of privacy to the original allegations of injurious falsehood. The defendants had objected to that amendment claiming that the invasion of privacy claims were barred by the applicable statute of limitations. General Statutes § 52-577. On December 2, 1980, the plaintiff filed a second amended complaint in which he consolidated some of his invasion of privacy claims. Rather than file an objection to the plaintiff's second request to amend, the defendants raised the statute of limitations claim as a special defense. The defendants claim on appeal, as they did in their objection to the first amended complaint and in their special defense to the second amended complaint that the allegations of invasion of privacy by appropriation and by false light included in the plaintiff's amended complaint were barred by the applicable statute of limitations because those allegations were separate and distinct from the cause of action for injurious falsehood, the only allegation in the original complaint. We disagree.

The date of the incident giving rise to the cause of action was November 29, 1976, the date the defendants mailed the letter requesting the editor of the magazine to publish the letter in question. The applicable three year statute of limitations for this cause of action began to run at that time. See General Statutes § 52-577. The cause of action alleged in the original complaint filed in September, 1977, was brought well within the period allowed by the statute of limitations. The defendants claim, however, that because the counts additionally alleged in the amended complaint filed in May, 1980, were separate and distinct from the initial cause of action, the amended complaint cannot relate back in time to the date when the original complaint

was filed and, therefore, the additional causes of action should have been barred as they were raised after the three year statute of limitations had run.[4]

The trial court may allow, in its discretion, an amendment to pleadings. *Saphir* v. *Neustadt,* 177 Conn. 191, 206, 413 A.2d 843 (1979); *Wesson* v. *F. M. Heritage Co.,* 174 Conn. 236, 239, 386 A.2d 217 (1978); see Practice Book § 176. Such a ruling can be reversed only upon a clear showing of an abuse of discretion. *Saphir* v. *Neustadt,* supra; *Antonofsky* v. *Goldberg,* 144 Conn. 594, 597, 136 A.2d 338 (1957). Factors to be considered in determining whether there has been an abuse of discretion include unreasonable delay, fairness to opposing parties and the negligence of the party offering the amendment. *DuBose* v. *Carabetta,* 161 Conn. 254, 263, 287 A.2d 357 (1971); *Cummings* v. *General Motors Corporation,* 146 Conn. 443, 449–50, 151 A.2d 884 (1959).

An amended complaint, if permitted, relates back to and is treated as filed at the time of the original complaint unless it alleges a new cause of action. *Keenan* v. *Yale New Haven Hospital,* 167 Conn. 284, 285, 355 A.2d 253 (1974); *Baker* v. *Baker,* 166 Conn. 476, 486, 352 A.2d 277 (1974). A cause of action must arise from a single group of facts. *Keenan* v. *Yale New Haven*

---

[4] The plaintiff claims that although the defendants raised the statute of limitations issue in their objection to the amended complaint as a special defense at trial and in their motion for directed verdicts, they failed to raise the issue in their postverdict motions and, because the defendants' appeal is from the denial, at least in part, of those motions, the statute of limitations issue was not preserved below and consequently is an issue not properly before this court. This claim is not without merit. See *Pietrorazio* v. *Santopietro,* 185 Conn. 510, 441 A.2d 163 (1981); but see Practice Book § 3063; *Phenning* v. *Silansky,* 144 Conn. 223, 224, 129 A.2d 224 (1957). We need not expound upon this argument because, while we address the propriety of the amendment, our conclusion is in no way prejudicial to the plaintiff. If the plaintiff's assertion were correct, we might be limited to a "plain error" review. See Practice Book § 3063. Since we find, however, that there was no abuse of discretion in allowing the amendment, the form of, or the authority to, review is of no consequence.

*Hospital,* supra; *Gallo* v. *G. Fox & Co.,* 148 Conn. 327, 330, 170 A.2d 724 (1961). The test for determining whether or not a new cause of action has been alleged is somewhat nebulous. "To relate back to the institution of the action the amendment must arise from a single group of facts." *Keenan* v. *Yale New Haven Hospital,* supra; *Kelsall* v. *Kelsall,* 139 Conn. 163, 165, 90 A.2d 878 (1952). " 'A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. . . . "A right of action at law arises from the existence of a primary right in the plaintiff, and in invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitute the cause of action." ' " (Citations omitted.) *Saphir* v. *Neustadt,* 177 Conn. 191, 207, 413 A.2d 843 (1979); see *Burgess* v. *Vanguard Ins. Co.,* 192 Conn. 124, 125–26, 470 A.2d 244 (1984). An amendment may properly expand or amplify what had originally been alleged in support of the cause of action. *Burgess* v. *Vanguard Ins. Co.,* supra; *Giglio* v. *Connecticut Light & Power Co.,* 180 Conn. 230, 239, 429 A.2d 486 (1980); *Gallo* v. *G. Fox & Co.,* supra. A change in the allegations of liability, therefore, does not necessarily amount to the introduction of a new cause of action. *Cooper* v. *Ketover,* 35 Conn. Sup. 38, 43, 393 A.2d 64 (1978); 1 Stephenson, Conn. Civ. Proc. § 99. Where an entirely new and different factual situation is presented, however, a new and different cause of action is stated. *Gallo* v. *G. Fox & Co.,* supra.[5]

---

[5] See *Keenan* v. *Yale New Haven Hospital,* 167 Conn. 284, 355 A.2d 253 (1974) (amended complaint alleging assault and battery said not to relate back to original complaint in negligence); *Gallo* v. *G. Fox & Co.,* 148 Conn. 327, 170 A.2d 724 (1961) (amendment alleging fall on escalator due to foreign substance said not to relate back to original complaint alleging defective elevator); *Steinecke* v. *Medalie,* 139 Conn. 152, 90 A.2d 875 (1952) (amendment asserting broken, crooked hallway barred as separate and distinct from original complaint alleging injury due to ice and snow accumulation).

We find that the acts which gave rise to a claim for injurious falsehood are not separate and distinct from the acts which gave rise to the alleged invasion of privacy claims. All of the plaintiff's theories of liability arise from a single group of facts. We find, therefore, that the court did not abuse its discretion in allowing the amendment to the complaint.

## II

The defendants claim that the plaintiff failed to prove the essential elements of invasion of privacy by placing the plaintiff in a false light and, therefore, that their motion for judgment notwithstanding the verdict should have been granted on counts five and six.

The existence of a cause of action for invasion of privacy has only recently been officially recognized by the Connecticut Supreme Court. *Venturi* v. *Savitt, Inc.,* 191 Conn. 588, 591, 468 A.2d 933 (1983); *Goodrich* v. *Waterbury Republican-American, Inc.,* 188 Conn. 107, 127, 448 A.2d 1317 (1982).[6] In recognizing this cause of action, the Supreme Court adopted the definition and categories of invasion of privacy as set forth in 3 Restatement (Second), Torts § 652A: (a) unreasonable intrusion upon the seclusion of another; (b) appropriation of the other's name or likeness; (c) unreasonable publicity given to the other's private life; or (d) publicity that places the other in a false light before the public. *Goodrich* v. *Waterbury Republican-American, Inc.,* supra, 128; see *Venturi* v. *Savitt, Inc.,* supra.

In order to establish invasion of privacy by false light, the plaintiff must show "(a) the false light in which the

---

[6] Prior to 1982, however, courts of this state countenanced invasion of privacy as a cause of action. See *Rafferty* v. *Hartford Courant Co.,* 36 Conn. Sup. 239, 416 A.2d 1215 (1980); *Tucker* v. *Bitonti,* 34 Conn. Sup. 643, 382 A.2d 841 (1977); *LaFontaine* v. *Family Drug Stores, Inc.,* 33 Conn. Sup. 66, 360 A.2d 899 (1976); *Korn* v. *Rennison,* 21 Conn. Sup. 400, 156 A.2d 476 (1959).

other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." 3 Restatement (Second), Torts § 652E; see *Goodrich* v. *Waterbury Republican-American, Inc.,* supra.

"This form of invasion of privacy protects one's interest in not being placed before the public in an objectionable false light or false position, 'or in other words, otherwise than as he is.' 3 Restatement (Second), Torts, § 652E, comment b. The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true; ibid; and (2) is such a 'major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position.' Id., comment c." *Goodrich* v. *Waterbury Republican-American, Inc.,* supra, 131.

The defendants claim that there was no evidence which would support a finding that the light in which the plaintiff was placed was false, that the light in which the plaintiff was placed was highly offensive to an ordinary person, or that the defendants had knowledge of or acted in reckless disregard as to the falsity of the published material.

The jury returned verdicts for the plaintiff on the counts for invasion of privacy by false light. The court refused to set aside those verdicts. The ruling of the trial court on a motion to set aside a verdict is entitled to great weight. *Hearl* v. *Waterbury YMCA,* 187 Conn. 1, 3, 444 A.2d 211 (1982); *Darling* v. *Burrone Bros., Inc.,* 162 Conn. 187, 200, 292 A.2d 912 (1972). The trial judge can sense the atmosphere of a trial and has an excellent vantage point for evaluating the factors that may have brought the jury to its verdict. *Hearl* v. *Waterbury YMCA,* supra.

In reviewing the court's decision concerning a motion to set aside a verdict, the question is whether the trial court clearly abused its discretion. *Labatt* v. *Grunewald,* 182 Conn. 236, 240, 438 A.2d 85 (1980). The test to be followed is whether it is clear that the jury could reasonably and logically have reached the conclusion they did. If so, the court's refusal to set aside the verdict will be sustained. Id., 240–41. We find that the jury could reasonably and logically have concluded as it did and that the court did not abuse its discretion in refusing to set aside the verdicts on these counts for invasion of privacy by false light.

It is essential to this theory of liability that the material published concerning the plaintiff is not true. 3 Restatement (Second), Torts § 652E, comment a. In the context of this case, it is not whether or not the assertions made are true, but whether the assertions or beliefs are in truth those of the plaintiff. Although the plaintiff testified that he agreed "in part" with the judgments and beliefs attributed to him in the letter, he steadfastly maintained that portions of the letter did not accurately reflect his beliefs or judgments, and that the facts and allegations in the letter were not true.

In testifying that in his opinion certain parts of the letter were not even true, it is clear that the jury could infer that they were, therefore, not the plaintiff's beliefs or judgments. There is sufficient evidence for the jury to have found that the letter attributed to the plaintiff views which were not, in truth, his own.[7] The jury could reasonably have found this to be highly offensive to a reasonable person because there is sufficient evidence to establish that there was a "major misrepresenta-

---

[7] 3 Restatement (Second) Torts § 652E, comment b cites as an example: "A is a renowned poet. B publishes in his magazine a spurious inferior poem, signed with A's name. Regardless of whether the poem is so bad as to subject B to liability for libel, B is subject to liability to A for invasion of privacy [for placing A in a false light]."

tion of his character, history, activities or beliefs.'' 3 Restatement (Second), Torts § 652E, comment c. The plaintiff testified that he was bothered, annoyed, offended and humiliated by the publication of the letter. The jury found that a reasonable person would agree.

As concerns the defendants' claim that the evidence does not establish that they knew or acted in reckless disregard of the falsity of the published letter, the record is abundantly clear that the plaintiff on numerous occasions voiced his objection to the publication of the letter in question using his name. The jury could reasonably conclude that the defendants knew of the falsity, or at the very least, acted in reckless disregard of it, when they sought publication of the letter over his objections. The trial court did not abuse its discretion, therefore, in denying the motion to set aside the verdict on counts five and six.

### III

The defendants further assign as error on appeal that the damage awards rendered upon counts three through six were unsupported by the evidence. The matter of damages is peculiarly within the province of the trier of fact. *Angelica* v. *Fernandes,* 174 Conn. 534, 535, 391 A.2d 167 (1978); *Johnson* v. *Flammia,* 169 Conn. 491, 499, 363 A.2d 1048 (1975). The court should not interfere with the jury's determination except when the verdict is plainly excessive or exorbitant. *Pisel* v. *Stamford Hospital,* 180 Conn. 314, 342–43, 430 A.2d 1 (1980); *Thomas* v. *Katz,* 171 Conn. 412, 416, 370 A.2d 978 (1976). A verdict is excessive if it contains an award for an element of damages not proven. *Healy* v. *White,* 173 Conn. 438, 441, 378 A.2d 540 (1977). The refusal of the trial court to disturb a verdict is strong support for its propriety. Id., 441–42.

The Restatement (Second), Torts § 652H states: "One who has established a cause of action for invasion of his privacy is entitled to recover damages for (a) the harm to his interest in privacy resulting from the invasion; (b) his mental distress proved to have been suffered if it is of a kind that normally results from such an invasion; and (c) special damages of which the invasion is a legal cause."

The jury found, the court found, and the record reveals to us that there was sufficient evidence to sustain the award of damages on counts three through six.

Returning separate verdicts and awarding damages for both invasion of privacy by appropriation and invasion of privacy by false light, however, amounted to a duplication of damages. In the present case, the wrong complained of constituted but one transaction, the import of which was to invade the plaintiff's privacy without his consent. The publication of a single letter, the contents of which placed the plaintiff in a false light, and the attribution of the letter to the plaintiff by appropriating his name all constituted a single transaction. Thus, although the plaintiff in this case was entitled to allege the respective theories of liability alternatively or in separate claims, he is not entitled to recover twice for the same elements of damage such as mental distress, harm to reputation, pecuniary loss or resulting unjust enrichment growing out of the same transaction, occurrence or event. Cf. *Shor* v. *Billingsley,* 4 Misc. 2d 857, 872–74, 158 N.Y.S.2d 476 (1957); *Metzger* v. *Dell Publishing Co.,* 207 Misc. 182, 186–87, 136 N.Y.S.2d 888 (1955).

The elements of damage establishing liability for invasion of privacy for appropriation of the plaintiff's name and those establishing liability for invasion of privacy by placing the plaintiff in a false light were duplicative. One event, the request to publish the letter and its sub-

sequent publication, resulted in the harm alleged. Put another way, the plaintiff cannot twice suffer damage to his reputation, mental distress or other harm from this one transaction. Thus, he should not twice recover damages.

Accordingly, because we find that the damage awards overlap to the extent of $24,000, we find error to the extent of the overlap.

## IV

Concerning the defendants' assertions that the plaintiff consented to the publication of the letter, this is a question of fact which was within the province of the jury. We will not retry the facts or pass upon the credibility of witnesses. *Johnson* v. *Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975). It is axiomatic that a resolution of credibility is strictly a matter for the jury. *Williams* v. *Salamone,* 192 Conn. 116, 123, 470 A.2d 694 (1984). The plaintiff testified that he continually objected to the publication of the letter utilizing his name and the jury believed him. We cannot substitute our judgment for that of the jury if there is sufficient evidence to support their verdict. *State* v. *Stankowski,* 184 Conn. 121, 127, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981). There was sufficient evidence.

## V

In considering the issues raised by the plaintiff on his cross appeal, we find that the court did not abuse its discretion in setting the verdict aside as to counts one and two. Moreover, we will not review the claimed error in the evidentiary ruling of the court because the plaintiff did not comply with the rules of practice.[8]

---

[8] Practice Book § 3060F (c) (3) sets out the procedure which must be followed in order for an appellate court to review claimed errors in evidentiary rulings in both jury and court cases. The Supreme Court has made it clear that failure to follow this rule will not be condoned or excused. See

There is error in part; the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff on counts three through six in the amount of $32,000 with interest from the date of the original verdict.

In this opinion the other judges concurred.

---

*Southern Connecticut Gas Co.* v. *Housing Authority,* 191 Conn. 514, 523 n.5, 468 A.2d 574 (1983); *State* v. *Kolinsky,* 182 Conn. 533, 541-42, 438 A.2d 762 (1980), cert. denied, 451 U.S. 973, 101 S. Ct. 2054, 68 L. Ed. 2d 354 (1981); *State* v. *Stevens,* 178 Conn. 649, 656-57, 425 A.2d 104 (1979); *State* v. *Singleton,* 174 Conn. 112, 113-14, 384 A.2d 334 (1977), cert. denied, 440 U.S. 947, 99 S. Ct. 1425, 59 L. Ed. 2d 635 (1979). The court has stated that "rulings that are claimed as evidentiary errors to be reviewed by this court *must* be provided and printed in the briefs as required and outlined by the Practice Book." *State* v. *McDowell,* 179 Conn. 121, 127-28 n.5, 425 A.2d 935 (1979). Mere references to transcripts, as in this case, are insufficient. See *Southern Connecticut Gas Co.* v. *Housing Authority,* supra.