[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE (# 108)
On March 23 1999,[1] the plaintiffs, Robert and Richard Nolfi, filed their original five count complaint. On May 5, 2000, the plaintiffs filed an amended complaint alleging the following facts. Robert Nolfi is a detective with the Fairfield police department and Richard Nolfi is a retired police officer previously employed by the same. The defendants, Martin and Susan Melson, allegedly are involved in the business of locating individuals and property, property repossession, debt collection and investigatory work. Between September 1997 and March 1998, the defendants falsely impersonated and identified themselves as the plaintiffs while engaging in their business. While falsely identifying themselves as either officer Robert Nolfi, or officer Richard Nolfi, of the Fairfield police department, the defendants allegedly intimidated people in order to obtain information. The defendants also allegedly conspired and aided and abetted each other in these actions. In addition, the plaintiffs allege that the defendants consciously knew of the falsity in which they held themselves out and gave publicity to it by publishing such falsity to numerous law enforcement agencies, private organizations and individuals on a repeated basis. As a result of this conduct, the plaintiffs' amended complaint alleges causes of action for false light invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-1110a et seq., and unjust enrichment.
On February 16, 2000, the defendants filed a motion to strike all five counts of the complaint with an accompanying memorandum. On March 1, 2000, the plaintiffs filed a memorandum in opposition thereto.
"Because a motion to strike challenges the legal sufficiency of a pleading . . . [it] requires no factual findings. . . . [The court] must read the allegations of the complaint generously to sustain its viability, if possible. . . . [The court] must, therefore, take the facts to be those alleged in the complaint . . . and . . . construe the complaint in the manner most favorable to sustaining its legal CT Page 7088 sufficiency." (Internal quotation marks omitted.) Sherwood v. DanburyHospital, 252 Conn. 193, 212-13 ___ A.2d ___ (2000).
 A. False Light Invasion of Privacy
The defendants move to strike count one of the complaint on the basis that the plaintiffs fail to allege sufficient facts to support a cause of action for false light invasion of privacy. Specifically, the defendants argue that their conduct was not sufficiently egregious to constitute a major misrepresentation of the plaintiffs and, alternatively, if their conduct did constitute a sufficiently tortious misrepresentation, then the publicity of the falsity does not rise to the level of a cause of action for invasion of privacy. The plaintiffs counter that the defendants' conduct of impersonating police officers violates a criminal statute,[2] and is, therefore, a serious misrepresentation. The plaintiffs further argue that the defendants' intimidation and threats made to others while impersonating the plaintiffs constitutes a major misrepresentation of the plaintiffs' character. The plaintiffs also argue that the defendants sufficiently published the falsity for purposes of invasion of privacy.
"To establish invasion of privacy by false light, the plaintiffs [are] required to show that (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." (Internal quotation marks omitted.) Honan v. Dimyan, 52 Conn. App. 123,132-33, 726 A.2d 613 (1999); see Goodrich v. WaterburyAmerican-Republican, Inc., 188 Conn. 107, 131, 438 A.2d 1317 (1982). "This form of invasion of privacy protects one's interest in not being placed before the public in an objectionable false light or false position, or in other words, otherwise than as he is. . . . The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true . . . and (2) is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position." (Citations omitted; internal quotation marks omitted.) Jonap v. Silver, 1 Conn. App. 550, 558, 474 A.2d 800 (1984);Goodrich v. Waterbury American-Republican, Inc., 188 Conn. 131. Moreover, "[t]o satisfy the element of publicity under an invasion of privacy by false light claim, the plaintiff must show that the matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge, thus it is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiffs private life to a single person or even to a small group of persons." (Citations omitted; CT Page 7089 internal quotation marks omitted.) Picerno v. Alexsis, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 535383 (February 17, 1998, Wagner, J.T.R.).
Here, the plaintiffs have stated a cause of action for false light invasion of privacy. The defendants' conduct, as alleged, is sufficiently and seriously offensive to a reasonable person for two reasons. First, the plaintiffs allege that the defendants not only impersonated them, but did so to intimidate and wrongfully obtain information from other people. This is the type of conduct that constitutes "a major misrepresentation" of the plaintiffs' "character, histor[ies], activities or beliefs. . . ." See Jonap v. Silver, supra, 1 Conn. App. 558. It may be implied that the plaintiffs would not intimidate others to illicitly obtain information. Second, the legislature has addressed this issue and enacted legislation that makes impersonation a felony. See General Statutes § 53a-130a
(a) and (b). Further, the plaintiffs' allegation that the defendants "gave publicity to the statements" by publishing the statements to numerous law enforcement and private agencies, as well as individuals, on a repeated basis is sufficient to meet the publicity requirement for the tort of false light invasion of privacy. See Walters v. Homestaff HealthCare, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 146961 (February 8, 1996, Tobin, J.) (publicity element satisfied when matter communicated to public at large, or to so many that matter substantially certain to become public knowledge).
The defendants' motion to strike count one of the plaintiffs' amended complaint is denied.
 B. Intentional Infliction of Emotional Distress
The defendants move to strike count two of the complaint on the ground that the plaintiffs do not sufficiently allege a cause of action for intentional infliction of emotional distress. The defendants argue that their conduct does not rise to the level of being outrageous, and they had no intent to injure the plaintiffs. The plaintiffs argue that the alleged acts are "extreme and outrageous" because such acts, by statute, are classified as a felony, and the alleged acts were coupled with allegations of intimidation and attempts to wrongfully obtain information.
"[F]or the plaintiff to prevail in a case for liability under . . . [the intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of CT Page 7090 the plaintiffs distress; and (4) that the emotional distress sustained by the plaintiff was revere. . . . Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . . Thus, [it is the intent to cause injury that is the gravamen of the tort. . . ." DeLaurentis v. New Haven, 220 Conn. 225, 266-67, 597 A.2d 807
(1991). "Whether the defendant's conduct and the plaintiffs resulting distress are sufficient to satisfy . . . these elements is a question, in the first instance, for [the] court." (Internal quotation marks omitted.)Ancona v. Manafort Bros., Inc., 56 Conn. App. 701, 712, 746 A.2d 184
(2000).
Here, the plaintiffs have stated a cause of action for intentional infliction of emotional distress. The alleged conduct of the defendants has been classified as criminal. See General Statutes § 53a-130a (a) and (b). The legislature determined that such conduct would not be tolerated and classified such conduct as a crime. The defendants' conduct, as alleged, is, therefore, sufficiently "outrageous" that society would not tolerate it. Additionally, the plaintiffs' complaint contains sufficient facts demonstrating that defendants should haveknown that impersonating the plaintiffs in such a manner, under such circumstances, would have caused emotional distress. See DeLaurentis v.New Haven, supra, 220 Conn. 266. The plaintiffs incorporate the allegations of count one into count two. Count one alleges that "[a]s a result of the publication of . . . false statements, plaintiffs suffered injury to their reputations and that they suffered severe emotional distress which required medical treatment, and expenditures for medical treatment." (Count one, ¶ 12.) Finally, the plaintiffs allege that they suffer and continue to suffer from harm to their reputations and emotional distress requiring medical treatment. The plaintiffs' complaint sufficiently alleges a cause of action for intentional infliction of emotional distress and the defendants' motion to strike count two of the plaintiffs' amended complaint is denied.
 C. Negligent Infliction of Emotional Distress
The defendants move to strike count three of the complaint on the ground that the plaintiffs fail to allege properly a cause of action for negligent infliction of emotional distress. Specifically, the defendants argue that the plaintiffs fail to allege that the defendants' conduct might result in illness or bodily harm, and the plaintiffs fail properly to allege negligence. The plaintiffs counter that they have alleged each element of a negligence infliction of emotional distress claim.
The Connecticut Supreme Court "first recognized a cause of action for CT Page 7091 negligent infliction of emotional distress in Montinieri v. Southern NewEngland Telephone Co., 175 Conn. 337, 345, 398 A.2d 1180 (1978). [The court] concluded . . . that in order to state such a claim, the plaintiff has the burden of pleading that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm." (Internal quotation marks omitted.) Parsons v. United TechnologiesCorp., 243 Conn. 66, 88, 700 A.2d 655 (1997). The emotional distress must be "reasonable in light of the conduct of the defendants." Barrett v.Danbury Hospital, 232 Conn. 242, 261, 654 A.2d 748 (1995).
In this case, the plaintiffs have sufficiently alleged a cause of action for negligent infliction of emotional distress. Count three alleges that the defendants should have realized that their conduct involved an unreasonable risk of causing emotional harm to the plaintiffs, and as a result of the defendants' conduct, the plaintiffs suffered emotional distress. In addition, count three incorporates the allegations of count one, in which the plaintiffs allege that their emotional distress required medical treatment. Based on the factual allegations, both expressed and implied, contained in count three, this court finds that the plaintiffs' allegations are sufficient to establish that their suffering of emotional distress was reasonable in light of the defendants' alleged conduct. See Barrett v. Danbury Hospital, supra,232 Conn. 261. This court may infer that portraying the plaintiffs as police officers who intimidate people to obtain information involved an unreasonable risk of causing emotional distress that might result in the illness the plaintiffs allegedly suffered. Therefore, this court denies the defendants' motion to strike count three of the plaintiffs' amended complaint.
 D. CUTPA
The defendants move to strike count four of the plaintiffs' complaint on the ground that the plaintiffs fail to sufficiently allege a cause of action under CUTPA. In particular, the defendants contend that there was no trade or business relationship among these parties upon which a CUTPA action could be based. The defendants further argue that the plaintiffs only allege personal injuries, rather than an ascertainable loss which is required to maintain a CUTPA claim. The plaintiffs respond that they have alleged that the defendants were engaged in a business during the alleged conduct, and they further maintain that CUTPA is no longer limited to claims arising out of a consumer relationship. In addition, the plaintiffs contend that CUTPA claims have been permitted in the context of personal injury actions.
Connecticut's Unfair Trade Practices Act states, in relevant part, that CT Page 7092 "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a). Trade or commerce is defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in the state." General Statutes § 42-110a (4). "[T]o allege a CUTPA violation properly, the plaintiff must allege, inter alia, that the acts complained of were performed in a trade or business." (Internal quotation marks omitted.) Pergament v. Green, 32 Conn. App. 644,655, 630 A.2d 615, cert. denied, 228 Conn. 903, 634 A.2d 296 (1993).
"CUTPA imposes no requirement of a consumer relationship. . . . CUTPA is not limited to conduct involving consumer injury and . . . a competitor or other business person can maintain a CUTPA cause of action without showing consumer injury." (Internal quotation marks omitted.)Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 496, 656 A.2d 1009
(1995). "CUTPA was designed to protect two classes or to deal with two sets of problems. First, there is the protection of consumers from unfair or deceptive acts or practices. Then there is a concern with ensuring fair competition and in order to accomplish that end, competitors and other business people can bring a CUTPA action." Kruger v. Lynch, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 359169 (September 10, 1999, Melville, J.). Thus, even though a consumer
relationship is not required, the plaintiff "must have some kind of commercial relationship with the alleged wrongdoer, commercial relationship not being so much a business relationship but some kind of relationship in the marketplace so that the particular acts of wrongdoing alleged will interfere with fair and open competition in that particular marketplace." (Internal quotation marks omitted.) Id.; see also Valle v.Andrews, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 552111 (March 9, 1996, Hennessey, J.) (plaintiff "must have a relationship, either consumer or business, with the defendants").
In Jackson v. R.G. Whipple, Inc., 225 Conn. 705, 725-26, 627 A.2d 374
(1993), the Supreme Court stated that "although [p]rivate litigation under this act is essential . . . it strains credulity to conclude that CUTPA is so formless as to provide redress to any person, for any ascertainable harm, caused by any person in the conduct of any trade or commerce." (Internal quotation marks omitted.) Id., 727. The goal of protecting competitors and other business people "requires giving protection to direct competitors but also at times to business people who have that type of a commercial relationship to the alleged wrongdoer which is such that the latter's unfair and deceptive acts might deleteriously affect fair competition in a particular market place." CT Page 7093Connecticut Water Co. v. Thomaston, Superior Court, judicial district of Hartford at Hartford, Docket No. 535590 (April 24, 1997, Corradino, J.).
Several judges of the Superior Court have similarly required the allegation of a consumer, business or commercial relationship to state a proper CUTPA claim. See Ganim v. Smith Wesson Corp., Superior Court, judicial district of Waterbury, Docket No. 153198 (December 10, 1999,McWeeny, J.) ("The plaintiffs lack a commercial relationship with the defendants or commercial nexus which is essential for standing under CUTPA."); Phillips Industrial Service Corp. v. Connecticut Light PowerCo., Superior Court, judicial district of Waterbury, Docket No. 409665 (June 18, 1999, Sheldon, J.) (24 Conn.L.Rptr. 641, 643) ("The focus of the statute is thus not on unscrupulous behavior by businessmen in every aspect of their business lives, but on those specific types of unscrupulous behavior that take place in, and adversely affect others who take part in, the particular trade or commerce in which the defendant is engaged."); Marr v. WMX Technologies, Inc., Superior Court, judicial district of Litchfield at Litchfield, Docket No. 071542 (November 6, 1998, Sheldon, J.) (23 Conn.L.Rptr. 220, 224) ("Therefore, unless the plaintiffs allege that they suffered their alleged losses in the course and as a result of some commercial relationship with the defendants, their CUTPA claim must be stricken for failure to state a legally sufficient cause of action."); DeValle v. Goggins, Superior Court, judicial district of Waterbury, Docket No. 128043 (October 11, 1996,Peck, J.) (18 Conn.L.Rptr. 32, 34) ("In failing to allege any consumer, competitor, or business relationship with the defendants, the plaintiff has failed to allege a legally sufficient claim under CUTPA."); Edelwichv. 33 Sumner Associates, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 527767 (May 19, 1994,Hennessey, J.) (9 C.S.C.R. 620, 622) ("[T]he injured plaintiff in the present case does not, under the facts alleged by the plaintiff, possess at least some type of consumer relationship with the defendant owner of the property upon which the plaintiff was injured. Accordingly, the [CUTPA] count is stricken for failure to state a claim upon which relief under CUTPA may be granted.").
Applied here, the plaintiffs do not state sufficient allegations of any commercial nexus in relation to the defendants so as to have standing to assert a CUTPA claim. See Ganim v. Smith Wesson Corp., supra, Superior Court, Docket No. 153198. The plaintiffs only make the meager allegation that the defendants were engaged in the business of obtaining information, property and collecting debts when they committed the alleged misconduct. Count four, as well as the rest of the amended complaint, contains no allegation of a business, trade or commerce relationship between the plaintiffs and the defendants. There is no allegation that the defendants sold, rented, leased distributed or CT Page 7094 offered to sell, rent, lease, or distribute anything of value to the plaintiffs. See General Statutes § 42-110a (4). The plaintiffs fail to allege facts demonstrating that they were injured, either as consumers, or as competitors in the relevant marketplace in which the defendants were actively involved. See Phillips Industrial Service Corp.v. Connecticut Light Power Co., supra, Superior Court, Docket No. 409665. Thus, the plaintiffs do not allege a sufficient CUTPA claim upon which relief can be granted and therefore, the defendants' motion to strike count four of the plaintiffs' amended complaint is granted.
 E. Unjust Enrichment
The defendants move to strike count five of the complaint on the ground that the plaintiffs do not state a cause of action for unjust enrichment. Specifically, the defendants argue that the fifth count fails to allege any contractual relationship among the parties, and the plaintiffs merely conclusorily allege that the defendants have been unjustly enriched by their conduct. The plaintiffs counter that the existence of a contractual relationship is not an element of this cause of action, and that the plaintiffs have sufficiently alleged the required elements.
"[A] claim for unjust enrichment has broad dimensions. Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. . . . A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard." (Citations omitted; internal quotation marks omitted.) Meaney v. Connecticut Hospital Assn.,Inc., 250 Conn. 500, 511-12, 735 A.2d 813 (1999). "Unjust enrichment is a legal doctrine which can apply in some cases where no remedy is available pursuant to an express or implied contract; in order for a plaintiff to recover for unjust enrichment it must be shown that the defendants were benefitted [benefited], that the benefit was unjust in that it was not paid for by the defendants and that the failure of payment operated to the detriment of the plaintiff." Oxford Paint Hardware, Inc. v. Baxter, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 036182 (July 31, 1991,Fuller, J.) (6 C.S.C.R. 782), aff'd, 26 Conn. App. 941,601 A.2d 568 (1992).
In this case the plaintiffs have neither alleged the existence of an CT Page 7095 express or implied contract with the defendants, nor alleged that they were unable to recover on such a contract. See Oxford Paint Hardware v.Baxter, supra, Superior Court, Docket No. 036182. Furthermore, the plaintiffs have not alleged how the defendants benefitted [benefited] to the plaintiffs' detriment as a result of the plaintiffs conferring services or property to the defendants which would demand compensation. See Meaney v. Connecticut Hospital Assn., Inc., supra,250 Conn. 511-12. Therefore, the defendants' motion to strike count five of the plaintiffs' amended complaint is granted.
For the reasons set forth above, the defendants' motion to strike counts one, two and three of the plaintiffs' amended complaint is denied. The defendants' motion to strike counts four and five of the plaintiffs' amended complaint is granted.
JOHN W. MORAN, JUDGE