[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Billy L. Smith's revised complaint consists of thirty counts against twelve defendants. The defendants Hartford Firefighters Local 760 ("Union"), Carmine Zitani, Thomas DiScipio, Scott Brady, John Cooper, and James McLoughlin ("Individual Union Defendants") have moved to strike counts 1, 2, 13, 21, 23, 25, 27, and 29 for failure to state claims for which relief may be granted. The defendants City of Hartford ("City"), Michael Peters, Saundra Kee Borges, Henry Langley, Robert E. Dobson, and Patricia Washington ("Individual Hartford Defendants") have moved to strike all or parts of counts 3-12, 14-20, 24, 26, 28, and 30 for failure to state a claim upon which relief may be granted. After the motions to strike were filed, the plaintiff withdrew counts 4, 7, 8, 11, 12, 17, the Ninth Amendment claim in 18, 19, 21, 22, and 23 as to the City; thus, these withdrawn counts are not addressed by the Court's decision regarding the remaining counts.[1]
 STANDARD OF REVIEW
A motion to strike may be used to contest the "legal sufficiency of the allegations of any complaint. . . . or of any one or more counts, to state a claim upon which relief can be granted." Practice Book §10-39(a)(1); Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269,270, 709 A.2d 558 (1998). A motion to strike admits facts well pleaded.RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 383 n. 2, 650 A.2d 153
(1994). A motion to strike does not, however, admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. NovametrixMedical Systems, Inc. v. BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25
(1992).
The facts in the complaint are to be construed most favorably to the plaintiff, Faulkner v. United Technologies Corp., 240 Conn. 576, 580,693 A.2d 293 (1997), in the manner most favorable to sustaining its legal sufficiency. Parsons v. United Technologies Corp., 243 Conn. 66, 68,700 A.2d 655 (1997). And when the court rules on a motion to strike, it is "limited to the facts alleged in the complaint," Novametrix MedicalSystems, Inc. v. BOC Group, Inc., supra, 224 Conn. 215, though the "pleadings must be construed broadly and realistically, rather than narrowly and technically[.]" Parsons v. United Technologies Corp., supra, 243 Conn. 100. Only those grounds raised in a motion to strike may be decided by the court. Meredith v. Police Commission, 182 Conn. 138, CT Page 8331 140 (1980).
COUNT I — VIOLATION OF CONNECTICUT GENERAL STATUTES § 52-570d
(AS TO DEFENDANTS MCLOUGHLIN AND LOCAL 760).
In Count I, the plaintiff alleges that "James McLoughlin, and/or other members of the defendant union, Local 760, and/or a person or persons unknown" intentionally overheard and recorded telephone conversations between the plaintiff and another individual, Vincent Graves. Specifically, the plaintiff alleges that the conversations were intercepted via a radio scanner and recorded by the use of an instrument, device, and/or equipment. The plaintiff also alleges that he did not consent to the recording, that there was no verbal notification that the conversation was being recorded, and that there was no accompanying automatic tone warning.
The defendants' memorandum in support of the motion to strike the first count argues that
 [t]he complaint clearly states that the Plaintiff does not know who used an instrument, device or equipment to record [the] conversation. The pleadings fail to identify who committed this act. The pleadings only contain the opinion of the Plaintiff that someone who could have been James McLoughlin, or could have been a member of Local 760, or `a person or persons unknown' intentionally overheard the . . . conversations . . .[.] The Revised Complaint does not plead facts but rather only legal conclusion of opinions as to who recorded the Plaintiff's conversation.
The defendants, in effect, argue that the plaintiff is merely opining as to who likely overheard the private conversations, and that because this is an opinion without factual support, a legal conclusion is being plead by the plaintiff. The court disagrees.
A legal conclusion is "[a] statement that expresses a legal duty or result but omits the facts creating or supporting the duty or result."Black's Law Dictionary 903 (7th ed. 1999). commitments is a question of law." Though legal conclusions cannot be pled, legal effects may be pled. That is, the legal consequence of an act or a contract may be specifically alleged. Practice Book § 10-2 states that "[a]cts and contracts may be stated according to their legal effect, but in so doingthe pleading should be such as fairly to apprise the adverse party of thestate of facts which it is intended to prove." (Emphasis added.) CT Page 8332
The allegation that a person or persons intentionally overheard or recorded telephone conversations is a factual statement which does not express a legal duty or a legal conclusion. Count I contains sufficient factual allegations which, if proven, constitute a cause of action under § 52-570d. The motion to strike Count I is denied.
COUNT II — VIOLATION OF CONNECTICUT GENERAL STATUTES § 54-41r
(AS TO LOCAL 760, UNION OFFICERS AND FIREFIGHTER DEFENDANTS).
Count II seeks to hold the union defendants liable under the Connecticut Wiretap Act which prohibits the illegal interception, disclosure or use of wire communications. The defendants claim that this count should be stricken due to the plaintiffs failure to specifically plead any facts alleging interception of the telephone communications or disclosure or use of the conversations.
The plaintiff has alleged that James McLoughlin, Local 760 and/or its agents intercepted, recorded and produced transcripts of the plaintiffs telephone conversations in violation of § 54-41r. He further alleges that the conversations and/or transcripts were mailed to the union president at the address of Local 760 and copies of the tapes and transcripts were made thereafter. The plaintiff alleges that the individual union defendants listened to the tapes, threatened to use the tapes at hearings, and suspended arbitration proceedings to review the tapes, mailed the tapes and transcripts to the media and asked its members to take a vote of no confidence based on the contents of the tapes or transcripts. The defendants' claim that the plaintiff has not specifically alleged interception, disclosure and/or use is without merit.
Since this is the only ground raised by the defendants in their motion to strike this count, the court does not address whether the provisions of § 54-41 et seq. can be implicated against these defendants. The motion to strike is denied.
COUNT III — VIOLATION OF CONNECTICUT GENERAL STATUTES § 54-41r
(AS TO DEFENDANT AGENTS, SERVANTS, AND EMPLOYEES OF CITY OF HARTFORD).
Count III is parallel to count II, though it is against the individual Hartford defendants. While the municipal defendants' arguments are similar to those asserted by the union defendants in count II, the municipal defendants further assert that they cannot be held liable under § 54-41 et seq. as a matter of law since that statute applies only to law enforcement officers. The court agrees.
Connecticut General Statutes § 53a-188 and 53a-189, enacted in CT Page 8333 1969, made certain forms of eavesdropping criminal. In 1971, the legislature augmented these earlier eavesdropping statutes by the passage of § 54-41a through § 54-41t. These latter statutes, as the Connecticut Supreme Court has noted, "see[k] to regulate the conduct oflaw enforcement officials whom [the legislature] specifically had exempted from the eavesdropping statutes [at an earlier time]." A review of the wiretapping and surveillance statutes evidences that C.G.S. §54-41 et seq. pertains to law enforcement officials.
In Washington v. Meachum, the Supreme Court concluded that "the wiretapping statutes, like the eavesdropping statutes, were intended to apply only to surreptitious monitoring by `investigative officers' and were not intended to apply to those situations covered by the recording statute where both parties are provided with notice that the call may be monitored." 238 Conn. 692, 712, 680 A.2d 262 (1996). Especially relevant are § 54-41p (d), which criminalizes the unauthorized disclosure by any investigative officer of wire communications, and § 54-41t, which was enacted in 1982 and makes the illegal or unauthorized interception of wire communications by an investigative officer a Class C felony.
There is no claim that the defendants are law enforcement officers. Since § 54-41 et seq. provides a remedy for breach of the statute by law enforcement officers, the plaintiffs claim is legally insufficient. The motion to strike this count is granted.
COUNT V — VIOLATION OF CONNECTICUT CONSTITUTION ARTICLE I, § 4
(AS TO INDIVIDUAL HARTFORD DEFENDANTS).
In Count V, the plaintiff alleges that his right to free speech, as protected by Connecticut Constitution Article I, § 4, was violated by the individual city defendants' actions. The defendants move to strike this count based on their claim that the plaintiff has failed to allege an imminent or direct injury to his free speech rights by the Hartford defendants and because the Connecticut Constitution does not provide the plaintiff a private right of action under the facts. The defendants further argue that the plaintiff has a statutory remedy under C.G.S. § 31-51q which precludes a separate constitutional claim. The court agrees with the defendants.
"Not every constitutional right or relationship gives rise to tort liability for its violation." Mendillo v. Board of Education, 246 Conn. 23, [246 Conn. 456], 710 A.2d 688 (1998). "As a general matter, we should not construe our state constitution to provide a basis for the recognition of a private damages action for injuries for which the legislature has provided a reasonably adequate statutory remedy." Kelley PropertyDevelopment, Inc. v. Lebanon, 226 Conn. 314, 627 A.2d 909 (1993). CT Page 8334
Recently, the Supreme Court reexamined the issue discussed in Kelley
and elaborated on its reasoning. In Binette v. Sabo, 244 Conn. 23, 48,710 A.2d 688 (1998), the court found that under its facts, a cause of action for damages under article first, §§ 7 and 9 was permissible. The Binette court held that a multifactor analysis should be used on a case by case basis to determine whether to recognize a cause of action for alleged violations of other state constitutional provisions. The factors to consider include: the nature of the constitutional claim at issue; the nature of the purported constitutional conduct; the nature of the harm; separation of powers considerations and other factors articulated in Bivens and Kelley. Binette at 48.
C.G.S. § 31-51q creates a cause of action for an employee whose exercise of the right to free speech results in discipline or discharge by the employer, provided that the employee's activity did not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and employer. C.G.S. § 31-51q protects "from retaliatory discharge an employee who invokes constitutionally guaranteed free speech rights that, in turn, protect statements that address a matter of public concern." Daley v. Aetna Life Casualty Co., 249 Conn. 766, 776,734 A.2d 112 (1999).
Since the legislature has created an adequate statutory remedy in § 31-51q which affords the protections of Article I § 4, the court does not find that there exists a separate constitutional claim for the violation of free speech. The motion to strike is granted.
COUNT VI — VIOLATION OF CONNECTICUT CONSTITUTION ARTICLE I, § 4
(AS TO DEFENDANT CITY OF HARTFORD)
This count claims violations by the city of Hartford of the plaintiffs article 1 § 4 right to free speech under the Connecticut constitution. Since the plaintiff was employed by the city, § 31-51q
is implicated. For the reasons set forth above, the court does not find that there is a cause of action based on a constitutional free speech violation. The motion to strike is granted.
COUNT IX — VIOLATION OF CONNECTICUT CONSTITUTION ARTICLE I, § 9
(AS TO INDIVIDUAL HARTFORD DEFENDANTS).
This count, directed against the individual Hartford defendants, claims a violation of the plaintiffs constitutional right not to be punished unless warranted by law pursuant to article I § 9 of the Connecticut constitution. The defendants move to strike this count based on the CT Page 8335 plaintiffs failure to allege a viable cause of action because the facts as alleged do not comport with the narrow cause of action created inBinette. The court agrees.
As noted supra, the Connecticut Supreme Court has specifically recognized a cause of action for violations of Article I, § 9.Binette v. Sabo, supra, 244 Conn. 32. While the court in Binette focused on protecting private individuals from the potential great harm that could come from police officers illegally acting under color of law, § 9 protections were not limited to the criminal context. Id. at 43-45.
Article I, § 9 provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law." In State v. Walker,35 Conn. App. 431, 434-435, 686 A.2d 126 (1994), cert. denied231 Conn. 916, 648 A.2d 159 (1994), the court held that a civil sanction can constitute punishment when a sanction as applied to individual case serves the goal of punishment, that is, retribution and deterrence. At issue in Walker was whether an incarcerated defendant, who had been subjected to an administrative sanction (segregation and confinement to quarters) was punishment. The appellate court affirmed the trial court's decision that this sanction was not punishment for the purpose of the constitutional prohibition against double jeopardy. Id. at 436.
While arguably a civil sanction could constitute punishment for double jeopardy purposes, the court is aware of no appellate support for the notion that a verbal reprimand or a demotion in employment can constitute punishment as that term is used in article I § 9. That allegation is unlike the alleged egregious police misconduct that the Supreme Court held to be actionable in Binette. Since the reasoning of Binette
concerned the power of a police department vis a vie the citizenry in the context of law enforcement's duty to protect the citizenry, the court does not find that the holding of Binette pertains to the plaintiffs claims in this case. The motion to strike is granted.
COUNT X — VIOLATION OF CONNECTICUT CONSTITUTION ARTICLE I, § 9
(AS TO CITY DEFENDANT)
Count X claims a violation by the city of Hartford of the plaintiffs constitutional right to be free from punishment unless warranted by law under article I § 9 of the Connecticut constitution.
Since the court has found that article I § 9 is not implicated by the punishment claimed by the plaintiff, this count also fails. The motion to strike is granted. CT Page 8336
COUNT XIII — VIOLATION OF 18 U.S.C. § 2510 (AS TO LOCAL 760, UNION OFFICERS AND FIREFIGHTERS DEFENDANTS)
The Federal Wiretapping Act creates civil and criminal causes of action against those who intentionally intercept, use or disclose to another the contents of a wire, oral, or electronic communication, knowing or having reason to know that this information was obtained in violation of the statute. 18 U.S.C.A. §§ 2511, 2520, 2520(c)(2). In the Thirteenth Count, the plaintiff alleges violations of the Federal Wiretapping Act against Local 760, Union officers and Firefighter defendants. The defendants move to strike the count claiming that the plaintiff fails to specifically plead any facts alleging interception of the telephone communications or disclosure or use of the conversations.
"To prevail on a disclosure or use claim under the act, plaintiff must establish that the disclosure or use was intentional, that the information was obtained from an intercepted communication, and that the defendant knew or should have known that the interception was illegal."Peavy v. Dallas Independent School District, 57 F. Sup.2d 382, 388
(N.D.Tex. 1999); Forsyth v. Barr, 19 F.3d 1527, 1538 (5th Cir.). Even revealing the general nature of a communication or intimating its contents may constitute an actionable disclosure. Goodspeed v. Harman,39 F. Sup.2d 787, 790 (N.D.Tex. 1999).
The plaintiff has alleged that James McLoughlin, Local 760 and/or its agents or servants intercepted, recorded and produced transcripts of the plaintiffs telephone conversations in violation of the act. He further alleges that the conversations and/or transcripts were mailed to defendant union president Carmine Zitani at the address of Local 760 and copies of the tapes and transcripts were made thereafter. The plaintiff alleges that the defendants Carmine Zitani, Thomas DiScipio and Scott Brady listened to the tapes and, thereafter, the union threatened to use the tapes at hearings, suspended arbitration proceedings to review the tapes, mailed the tapes and transcripts to the media, and asked its members to take a vote of no confidence based on the contents of the tapes or transcripts. The plaintiff alleges that all defendants acted intentionally and knew or had reason to know that his conversations were illegally intercepted. The defendants' claim that the plaintiff has not pleaded a "use" in accordance with the statute is without merit. Accordingly, the motion to strike this count is denied.
COUNT XIV — VIOLATION OF 18 U.S.C. § 2510 (AS TO DEFENDANT AGENTS, SERVANTS AND EMPLOYEES OF THE CITY OF HARTFORD)
Count XIV sets forth claims against the individual Hartford defendants as agents, servants and employees of the city of Hartford. The defendants CT Page 8337 have moved to strike this count claiming that plaintiff failed to allege specific facts constituting a "use" of the recording. Particularly, the defendants claim that the plaintiff alleges only that the defendants Borges and Langley merely listened to the tapes without any knowledge of who made the recording or the circumstances surrounding the origin of the recording.
The plaintiffs revised complaint alleges more than just listening by the individual Hartford defendants. The plaintiff alleges that Saundra Kee Borges, Henry Langley, Patricia Washington and Robert Dobson verbally reprimanded the plaintiff for the content of his conversations, that Michael Peters verbally criticized the plaintiff for the conversations, and that he was reassigned and demoted by the defendants based on the content of the conversations. The plaintiff alleges that the defendants acted intentionally and that they knew or should have known that the recorded conversations were illegally intercepted.
The defendants argue that they did not know that the conversations were intercepted in violation of the federal wiretapping act and, therefore, cannot be held liable for their subsequent actions. As stated supra, in a motion to strike, the court must construe the pleadings in the light most favorable to the plaintiff. Given that plaintiff has alleged that the defendants did or should have known of the illegal origin of the recordings, he has sufficiently stated a claim for which relief can be granted. Whether or not the defendants did, in fact, know or have reason to know that the communication had been illegally intercepted is a question not appropriately addressed by the court at this time. The motion to strike this count is denied.
COUNT XV — VIOLATION OF 18 U.S.C. § 2510 (AS TO DEFENDANT CITY OF HARTFORD)
This count seeks to hold the city of Hartford liable under the Federal Wiretapping Act. The defendant argues that it cannot be held liable for a violation of the federal wiretapping statute because it is not a "person" as that term is defined in the statute. The plaintiff argues that a 1986 amendment to the statute indicates that governmental entities are subject to suit for violations of the statute.
As noted supra, the Federal Wiretapping Act prohibits certain willful interceptions or disclosures of communications by "any person."18 U.S.C. § 2511 (1). The Act defines the term "person" to include "any employee, or agent of the United States or any State or politicalsubdivision thereof and any individual, partnership, association, jointstock company, trust, or corporation." 18 U.S.C. § 2510 (6). This definition and the cases construing the meaning of the term "person" CT Page 8338 indicate that the term includes governmental employees, but does not include governmental entities.
The provision of the Act providing for civil liability,18 U.S.C. § 2520, was amended in January 1987. The amendment added the phrase "or entity" to the following provision:
 "Except as provided in § 2511(2)(a) (ii), any person whose wire, oral or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate."
This Amendment was made as part of the Electronic Communications Privacy Act of 1986, Pub.L. No. 99-508, § 103, 100 Stat. 1848, 1853 (1986). The amendment added the same language to the civil liability provision for interception of stored wire and electronic communications pursuant to 18 U.S.C. § 2707 (a). The Senate Committee Report summarizing § 2707 specifically states that the word "entity" includes governmental entities. S. Rep. No. 541, 99th Cong., 2d Sess. 43 (1986).
Prior to the enactment of the 1986 amendments, the definition of "person" already included business entities. Therefore, the addition of the term "entity" to § 2520(a) must be construed to refer to governmental entities in order to give effect to the new language. "If `entity' meant only to refer to business entities, it would be redundant or superfluous." Bodunde v. Parizek, No. 93-C-1464, 1993 WL 189941 (N.D.Ill. May 28, 1993). Accordingly, the statute does not exclude governmental units from liability under the Federal Wiretapping Act. PBALocal No. 38 v. Woodbridge Police Department, 832 F. Sup. 808, 822-23
(D.N.J. 1993); Doris v. Absher, 959 F. Sup. 813 (M.D.Tenn. 1997).
Although other courts [specifically the Amati court] have found that municipal liability does not exist under 18 U.S.C. § 2510, et seq., these courts have based their decision solely on the plain language of the definition of "person" and have not looked to the legislative history of the statute and its amendments. This court finds that there exists sufficient ambiguity in the statute to warrant examination of the legislative history.
Based upon the language of the statute, its amendments, the legislative history and the relevant caselaw, this court finds that governmental entities may be held liable under § 2520. The defendant's motion to strike this count is denied. CT Page 8339
COUNT XVI — VIOLATION OF 42 U.S.C. § 1983 (AS TO THE CITY OF HARTFORD, MICHAEL PETERS, SAUNDRA KEE BORGES, HENRY LANGLEY, ROBERT E. DOBSON AND PATRICIA WASHINGTON)
This count alleges a violation of 42 U.S.C. § 1983 by the city of Hartford, Michael Peters, Saundra Kee Borges, Henry Langeley, Robert E. Dobson and Patricia Washington. Particularly the plaintiff claims that the actions by the defendants have prevented him from freely exercising his right to speak as guaranteed by the First and Fourteenth Amendments to the United States Constitution. He claims that the defendants' actions have had and continue to have a chilling effect on the plaintiffs willingness to discuss issues of a public concern within the privacy of his home and elsewhere.
"A public employee's freedom of speech is not absolute." Spetalieri v.Kavanaugh, 36 F. Sup.2d 92, 104 (N.D.N.Y. 1998); Heil v. Santoro,147 F.3d 103, 109 (2d Cir. 1998) (citing Connick v. Myers 461 U.S. 138,103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). The United States Second Circuit Court of Appeals has held that, in order to appropriately assert afirst amendment claim under § 1983, the following allegations are required: (1) an interest protected by the First Amendment, (2) actions by the defendant motivated by or substantially caused by the plaintiffs exercise of his First Amendment rights, and (3) that the defendant's action effectively chilled the exercise of those rights. Connell v.Signoracci, 153 F.3d 74, 79 (2d Cir. 1998); In re State Police,888 F. Supp. at 1255. Under this analysis, the threshold issue is whether the plaintiffs speech was protected. The defendants claim that it was not.
The court must determine whether or not the speech in question is a matter of public concern availing it the protection of theFirst
Amendment. Whether speech is of public concern is a matter of law to be decided by the court and "must be determined by the content, form and context of a given statement." Connick at 1690. A discussion regarding race or discrimination is a matter of public concern entitled to fullFirst Amendment protection. See Id; Calvit v. Minneapolis PublicSchools, 122 F.3d 1112, 1117 (8th Cir. 1997). "The inappropriate or controversial character of a statement is irrelevant to the question of whether it deals with a matter of public concern." Rankin v. McPherson,483 U.S. 378, 107 S.Ct. 2891, 2898, 97 L.Ed.2d 315 (1987). In the present case, despite the derogatory nature of the plaintiffs comments, he was expressing views on race, among other topics. Accordingly, his speech is a matter of public concern and should be afforded First Amended protection.
The plaintiff has alleged that as a result of his exercise of free CT Page 8340 speech, he was demoted by the defendants. Given these allegations as true for the purposes of this motion, the plaintiff has shown that he sustained direct and immediate injury as a result of the defendants' actions which could have the effect of chilling his speech on similar issues, as alleged in his complaint. The motion to strike this count as to Michael Peters, Saundra Kee Borges, Henry Langley, Robert E. Dobson and Patricia Washington is denied.
A municipality may not be sued under § 1983 for an injury afflicted solely by its employees or agents. It is well settled, and conceded by the plaintiff, that a municipality may not be held liable under § 1983 solely on a respondeat superior basis. It may be held liable when the complained of actions are the result of the government's policy or custom. Monell v. Department of Social Services, 436 U.S. 658, 694
(1978); Davis v. Zirkelback, 149 F.3d 614 (7th Cir. 1998); Auriemma v.Rice, 957 F.2d 397 (1992); Baxter v. Vigo County School Corp. 26 F.3d 728
(1994); Amati v. Woodstock, 829 F. Sup. 998 (N.D.Ill. 1993); Abbott v.Village of Winthrop Harbor, 205 F.3d 976 (2000). The plaintiff here must demonstrate either that the actions of the various defendants resulted from the official written policy of the government regarding the interception or dissemination of telephone conversations, that such actions were widely accepted and constituted the known custom of the city, or that the individual defendants had the final authority to decide what action would be taken.
The plaintiff has alleged that the mayor, the city manager, the deputy city manger, the fire chief, and the personnel director have acted in violation of his constitutional rights. Although there may not have been a policy or custom regarding the interception and/or use of communications, there can be no dispute that these are the individuals who would have the authority to make municipal policy, and the city may be bound by their actions. Accordingly, the motion to strike this count as to the city of Hartford is also denied.
COUNT XVIII — VIOLATION OF 42 U.S.C. § 1983 (AS TO THE CITY OF HARTFORD, MICHAEL PETERS, SAUNDRA KEE BORGES, HENRY LANGLEY, ROBERT E. DOBSON AND PATRICIA WASHINGTON)
This count alleges a violation of the plaintiffs Fifth andFourteenth
Amendment due process and privacy rights pursuant to 42 U.S.C. § 1983
by the city of Hartford, Michael Peters, Saundra Kee Borges, Henry Langeley, Robert E. Dobson and Patricia Washington. The defendants move to strike the Fifth Amendment due process claim based upon the lack of federal action required to invoke such a violation. In the plaintiffs Memorandum of Law in Opposition to Defendant's Motion to Strike dated May 2, 2000, the plaintiff acknowledges that his Fifth Amendment claim is not CT Page 8341 based on due process but on invasion of privacy.
As it is well settled that a necessary element to a Fifth Amendment due process violation is federal action, and there is clearly no such element in this case, the motion to strike is granted only as to aFifth Amendment due process claim.
COUNT XX — INVASION OF PRIVACY (AS TO THE CITY OF HARTFORD, MICHAEL PETERS, SAUNDRA KEE BORGES, HENRY LANGLEY, ROBERT E. DOBSON AND PATRICIA WASHINGTON)
In Count XX, the plaintiff claims that his privacy was invaded the city of Hartford, Michael Peters, Saundra Kee Borges, Henry Langley, Robert E. Dobson and Patricia Washington. The defendants move to strike claiming plaintiffs failure to allege any actionable intrusion on the part of the Hartford defendants.
The right to privacy is invaded if a person unreasonably and seriously interferes with another's interest in not having his affairs known to others or his likeness exhibited to the public. Korn v. Rennison,21 Conn. Sup. 400; Restatement of Torts § 867; Goodrich v.Waterbury-Republican, Inc., 188 Conn. 107 (1982); Venturi v. Savitt,Inc., 191 Conn. 588 (1983); Jonap v. Silver, 1 Conn. App. 550 (1984). There are four distinct actionable areas in this realm: (1) intrusion upon the plaintiffs seclusion or private affairs; (2) disclosure of embarrassing private facts about the plaintiff; (3) publishing false derogatory statements about the plaintiff, and (4) commercial appropriation of the plaintiffs likeness. LaFontaine v. Family DrugStores, Inc., 33 Conn. Sup. 66, 70-71 (1976). Liability exists if the conduct was such that the defendants knew or should have known that their actions would be offensive to the ordinary person. Korn at 403-404.
The plaintiff has alleged specific actions by the defendants which he claims intruded upon his private affairs and would be offensive to a reasonable person. These allegations are sufficient to state a claim upon which relief may be granted. The motion to strike this count is denied.
COUNT XXIII — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (AS TO LOCAL 760, CARMINE ZITANI, THOMAS DISCIPIO, SCOTT BRADY, JOHN COOPER AND JAMES MCLOUGHLIN)
The plaintiff claims intentional infliction of emotional distress as to Local 760, Carmine Zitani, Thomas DiScipio, Scott Brady, John Cooper and James McLoughlin. To prevail on a claim of intentional infliction of emotional distress, four elements must be established. "It must be shown: (1) that the actor intended to inflict emotional distress; or that CT Page 8342 he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiffs distress; and that the emotional distress sustained by the plaintiff was severe."DeLaurentis v. New Haven, 220 Conn. 225, 266-67, 597 A.2d 807 (1991);Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986). The defendants move to strike claiming that plaintiff has failed to allege extreme or outrageous conduct by the defendants.
"Extreme and outrageous conduct is an essential element in the tort of intentional infliction of emotional distress. Mere insults, indignities, or annoyances that are not extreme or outrageous will not suffice." Brownv. Ellis, 40 Conn. Sup. 165, 167, 484 A.2d 944 (1984); Biro v. Hirsch, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 314442 (February 5, 1998) (Skolnick, J.). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'" Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 20,597 A.2d 846, quoting 1 Restatement (Second), Torts § 46, comment (d). "Whether defendant's conduct and plaintiffs resulting distress are sufficient to satisfy these elements is a question, in the first instance for the court. Only where reasonable minds can differ does it become an issue for the jury." Bell v. Board of Education, 55 Conn. App. 400,409-410 (1999). "There is no bright line rule to determine what constitutes extreme and outrageous conduct sufficient to maintain an action. The court looks to specific facts and circumstances of each case in making its decision." Martin v. Bridgeport Hospital, Superior Court, judicial district of Fairfield at Bridgeport, docket number 356084 (February 11, 1999) (Melville, J.).
The plaintiff alleges a series of incidents which, taken as a whole, could amount to extreme and outrageous conduct by the defendants. The conduct alleged by the plaintiff — the illegal interception, recording, dissemination and use of private and personal telephone conversations — can hardly be said to involve the everyday rigors of living in society. The court finds that the plaintiff has sufficiently alleged conduct rising to the level of extreme and outrageous. The motion to strike this count is denied.
COUNT XXIV — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (AS TO CITY OF HARTFORD, MICHAEL PETERS, SAUNDRA KEE BORGES, HENRY LANGLEY, ROBERT E. DOBSON AND PATRICIA WASHINGTON)
The plaintiff claims intentional infliction of emotional distress as to the City of Hartford, Michael Peters, Saundra Kee Borges, Henry Langley, Robert E. Dobson and Patricia Washington. The defendants move to strike CT Page 8343 claiming that plaintiff has failed to sufficiently allege extreme or outrageous behavior to support such a claim.
"The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." Parsons v.United Technologies Corp., 243 Conn. 66, 89, 700 A.2d 655 (1997);Appleton v. Board of Education, 53 Conn. App. 252, 264, 730 A.2d 88
(1999) (determining the causes of intentional and negligent infliction of emotional distress under the same rule that "in emotional distress claims arising from a termination, the plaintiff must allege some conduct other than the termination itself to support the claim.")
Although the plaintiff has alleged conduct by defendants Dobson and Washington involving a series of actions spanning several months, which this court finds sufficient to escape Parsons and Appleton, such actions cannot be said to rise to the level of extreme and outrageous conduct. Accordingly, the motion to strike this count as to Dobson and Washington is granted.
The plaintiff alleges conduct by defendants Borges and Langley separate and distinct from the termination process, including the dissemination of his private telephone conversations to the media. The court finds that this behavior could rise to the level of extreme and outrageous conduct. The motion to strike this count as to these defendants is denied.
The plaintiff alleges that Mayor Michael Peters publicly criticized him for the content of his conversations. Although embarrassing and humiliating for the plaintiff, such conduct, a public reaction by the city leader, cannot be said to transgress the bounds of decent behavior and cannot be said to be extreme and outrageous. The motion to strike this count as to Michael Peters is granted.
COUNT XXV — NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (AS TO LOCAL 760, CARMINE ZITANI, THOMAS DISCIPIO, SCOTT BRADY, JOHN COOPER AND JAMES MCLOUGHLIN)
The plaintiff claims negligent infliction of emotional distress as to Local 760, Carmine Zitani, Thomas DiScipio, Scott Brady, John Cooper and James McLoughlin. Citing Parsons v. United Technologies, the defendants claim that an action for infliction of emotional distress in the employment context must be based on conduct relating to termination or the termination process. 243 Conn. 66, 88, 700 A.2d 655 (1997). The defendants argue that plaintiff has failed to allege that he was terminated from his employment and, in fact, he pleads that he retired. The defendants also claim that the plaintiffs failure to allege any substantial, physical injury resulting from any alleged acts of the CT Page 8344 defendants is fatal to his claim for negligent infliction of emotional distress.
Since the Parsons decision, however, our Appellate Court has clarified its meaning: Parsons simply states that, in emotional distress claims arising from a termination, the plaintiff must allege some conduct other than the termination itself to support the claim. Appleton v. Board ofEducation of Town of Stonington, 53 Conn. App. 252, 730 A.2d 88, 96
(1999). In this case, the plaintiff has alleged conduct by the defendants which goes beyond the employment context and spans several months, ending with his retirement from the Hartford Fire Department. Because the claim for emotional distress was based on actions prior to plaintiffs retirement, the fact that the conduct may have resulted in a resignation rather than a termination does not preclude the plaintiff from bringing emotional distress claim against the defendants.
To make out a cause of action for negligent infliction of emotional distress, the plaintiff must establish that the defendant engaged in conduct involving an unreasonable risk of causing emotional distress.Montinieri v. Southern New England Telephone Company, 175 Conn. 337,345 A.2d 1180 (1978). "`Unreasonable conduct' has been interpreted by the superior courts as conduct performed in an inconsiderate, humiliating or embarrassing manner." Stosuy v. Stamford, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 358369 (August 30, 1999) (Nadeau, J.). The conduct alleged in plaintiffs complaint rises to the level of inconsiderate, humiliating or embarrassing.
Turning to the defendants' second argument that plaintiffs failure to allege physical harm renders his claim insufficient, the court is unpersuaded. It is well settled that physical harm is not a necessary element to a claim for negligent infliction of emotional distress.Montinieri at 398. Accordingly, the plaintiffs claim does not fail for lacking a claim of physical harm. The plaintiff has sufficiently pleaded a cause of action for negligent infliction of emotional distress. The motion to strike is denied.
COUNT XXVI — NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (AS TO CITY OF HARTFORD, MICHAEL PETERS, SAUNDRA KEE BORGES, HENRY LANGLEY, ROBERT E. DOBSON AND PATRICIA WASHINGTON)
The plaintiff claims negligent infliction of emotional distress as to the City of Hartford, Michael Peters, Saundra Kee Borges, Henry Langley, Robert E. Dobson and Patricia Washington. The defendants assert that the plaintiff has failed to allege unreasonable conduct in a termination process which is necessary to maintain such an action. CT Page 8345
The defendants rely upon their assertion that the plaintiff was not terminated from his employment, but he retired voluntarily. Additionally, the defendants take the view that Parsons requires unreasonable conduct in a termination process. As stated above, in light of the Appleton decision, a plaintiff must allege some conduct other than mere termination. Id. The plaintiff does not allege that termination was the basis of his emotional distress. The plaintiff alleges that the defendants subjected him to a series of incidents culminating with his retirement. Therefore, all allegations of the complaint are distinct from termination and satisfy the plaintiffs burden under Appleton.
The plaintiff has alleged conduct which may be construed as unreasonable — defined as inconsiderate, humiliating or embarrassing. The motion to strike this count is denied.
COUNT XXVII — INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS (AS TO LOCAL 760 AND INDIVIDUAL UNION DEFENDANTS).
In this count, the plaintiff alleges that the defendants illegally and improperly interfered with his employment contract with the City of Hartford by their use and/or disclosure of his telephone conversations. The defendants move to strike this count because the revised complaint does not allege that the defendants committed any acts which interfered with the employment contract. Additionally, the defendants indicate that the revised complaint alleges that the plaintiff both was "forced to resign" and that the plaintiff "retired" from the Hartford Fire Department.
The elements of intentional interference with contractual relations, as well as an action for unlawful interference with business relations, are "the existence of a contractual or beneficial relationship, the defendant's knowledge of that relationship, the intent to interfere with it, and the consequential actual loss suffered by the plaintiff." Hart,Nininger Campbell Associates, Inc. v. Rogers, 16 Conn. App. 619, 629,548 A.2d 758 (1988); Beizer v. Goepfert, 28 Conn. App. 693, 701,613 A.2d 1336 (1992), cert. denied 224 Conn. 901, 615 A.2d 1044 (1992), cert. denied 507 U.S. 937, 113 S.Ct. 1416 (1993). "While our cases have not focused with particularity on what acts of interference are tortious, we have made it clear that not every act that disturbs a contract or business expectancy is actionable." (Internal citations omitted.) Kakadelis v. DeFabritis, 191 Conn. 276, 279, 464 A.2d 57
(1983). The plaintiff must prove "that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously." (Internal citations omitted.) Id. CT Page 8346
In Kadadelis, the court, relying on Blake v. Levy, 191 Conn. 257,260-261, 464 A.2d 52 (1983), also held that "in an action for intentional interference with business relations . . . the better reasoned approach requires the plaintiff to plead and prove at least some improper motive or improper means." (Internal citations omitted.) Id. "A claim is made out only when interference resulting in injury to another is wrongful bysome measure beyond the fact of the interference itself." (Emphasis added. Internal citations omitted.) Kakadelis v. DeFabritis, 191 Conn. 280, [191 Conn. 276].
The plaintiff has alleged the existence of a contractual relationship, the defendants' knowledge of that relationship, the intent to interfere with it, and a consequential actual loss suffered by the plaintiff. The plaintiff has alleged the illegal interception, use and disclosure of his private telephone conversations and that the defendants were improperly motivated in their actions by a desire to discredit the plaintiff and to save their respective positions. The plaintiff has sufficiently alleged facts that support a claim for intentional interference with contractual relations. The discrepancy between the terms the "resigned" and "retired" is not fatal to the plaintiffs allegations that the departure was forced and not voluntary. The motion to strike Count XXVII is denied.
COUNT XXVIII — INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS (AS TO DEFENDANTS CITY OF HARTFORD AND THE INDIVIDUAL CITY DEFENDANTS).
This count alleges intentional interference with contractual relations by the City as well as by the individual city defendants. The defendants move to strike based upon the plaintiffs failure to allege the existence of a contractual relationship with a third party that was affected by the actions of the Hartford defendants.
"It is well-settled that the tort of interference with contractual relations only lies when a third party adversely affects the contractual relations of two other parties." (Emphasis in original.) WellingtonSystems, Inc. v. Redding Group, Inc., 49 Conn. App. 152, 168. Wellington
further held that
 an agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the corporation liable in tort for breaching its own contract.
Such an agent could, however, "be held liable . . . if he did not act CT Page 8347 legitimately within the scope of duty but used the corporate power improperly for personal gain." Id. Such an allegation, in effect, converts the agent acting outside of the scope of authority to a third party who interferes with a contractual relationship of two other parties.
There is no allegation that the individual Hartford defendants were not acting legitimately within the scope of their authority. In the absence of any such allegation by the plaintiff, the court finds that the plaintiff has failed to sufficiently allege facts that permit a claim for intentional interference with contractual relations against both the city and the individual city defendants. The motion to strike Count XXVIII is granted.
COUNT XXIX — PUBLICITY GIVEN TO PRIVATE LIFE (AS TO THE UNION AND INDIVIDUAL UNION DEFENDANTS).
In this count, the plaintiff alleges that the contents of the telephone conversations were private facts, that these defendants unreasonably and illegally disclosed and/or publicly used the telephone conversations, which the public had no right to know, and that this disclosure and use was highly offensive and unreasonable. The defendants move to strike claiming that the plaintiff has failed to allege the publication of the conversations by these defendants, failed to allege the content of the statements made by the union defendants about the plaintiff, and the "conclusory" allegation made that the contents of the plaintiffs conversation are private facts.
The Connecticut Supreme Court recognized the existence of an invasion of privacy action in 1982. Goodrich v. Waterbury Republican-American,Inc., 188 Conn. 107, 126-127, 448 A.2d 1317 (1982). Publicity given to another's private life is one of four recognized separate causes of action. The other three are unreasonable intrusion upon the seclusion of another; appropriation of another's likeness; and publicity that unreasonably places the other in a false light before the public. Id. at 128. This cause of action is governed by First Amendment principles and is "actionable only if the matter publicized is of a kind that `(a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'" Id. at 132-133.
The four invasion of privacy actions serve to protect "four different interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing in common except that [an invasion of] each represents an interference with the right of the plaint if `to belet alone.'" (Emphasis added.) Id. at 127-128. The U.S. Supreme Court underscored the importance of this right to be let alone when it noted CT Page 8348 that "there is a zone of privacy surrounding every individual, a zone within which the State may protect him from intrusion by the press, with all its attendant publicity." (Emphasis in original.) Cox BroadcastingCorp., et al. v. Cohn, 420 U.S. 487, [420 U.S. 469].
In a recent decision in which this state's supreme court interpreted "invasion of privacy," the court listed the following as examples of personal and private information that are given protection: sexual relations; family quarrels; many unpleasant or disgraceful or humiliating illnesses; most intimate personal letters; most details of a man's life in his home; and some of his past history that he would rather forget.Perkins v. Freedom of Information Commission, 228 Conn. 158, 172-173,635 A.2d 783 (1993). The court opined:
 When these intimate details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of privacy, unless the matter is one of legitimate public interest. . . . [N]ot all personal and private information is protected from public disclosure: `The rule stated in [Section 652D of the Restatement (Second) of Torts] gives protection only against unreasonable publicity, of a kind highly offensive to the ordinary reasonable person. The protection afforded to the plaintiffs interest in his privacy must be relative to the customs of the time and place, to the occupation of the plaintiff and to the habits of his neighbors and fellow citizens. Complete privacy does not exist in this world except in a desert, and anyone who is not a hermit must expect and endure the ordinary incidents of the community life which he is a part. . . . Even a minor and moderate annoyance . . . is not sufficient to give him a cause of action under the rule[.] It is only when the publicity given to him is such that a reasonable person would feel justified in feeling seriously aggrieved by it, that the cause of action arises. Perkins v. Freedom of Information Commission, 228 Conn. 158, 173, 635 A.2d 783 (1993), quoting 3 Restatement (Second), Torts 652D, comment (d) (1977).
The defendants in this case argue that the plaintiff has failed to allege that the Union and the individual union defendants published the conversations. Ballentine's Legal Dictionary and Thesaurus, 541 (1995) defines "publication" as: "1. To issue; to distribute; to disseminate; to circulate. (2) To communicate; to announce. . . . (3) To utter." CT Page 8349 (Emphasis in original.) Since the plaintiff alleges the transcription, distribution, and dissemination of his private telephone conversations, which he claims were illegally intercepted and recorded, he has sufficiently pleaded publication.
Since there can only be a claim for wrongful publicity if the matter is not legitimately of public concern, the absence of the conversation contents from the complaint is not fatal. Ultimately, the fact finder will need to determine whether these particular conversations address matters of public concern. The same is true regarding the defendants' argument that the plaintiffs allegation that the contents of the conversations are private facts is conclusory.
The defendants' motion to strike Count XXIX is denied.
COUNT XXX — PUBLICITY GIVEN TO PRIVATE LIFE (AS TO THE CITY AND INDIVIDUAL CITY DEFENDANTS).
Substantively, this count is parallel to Count XXIX. The plaintiff here, however, alleges that
 [t]he defendants Dobson and Washington utilized the contents of the plaintiffs private conversations to discipline the plaintiff and publicized same as the basis of their discipline. Defendants Borges, Dobson and Peters publicly endorsed the disciplinary actions taken against the plaintiff and, in doing so, again referred to the intercepted phone conversations. The defendants Dobson, Washington, Borges, Langley and Peters based their disciplinary actions and public disclosures on the private statements of the plaintiff which they characterized as sexist, racist, homophobic or otherwise inappropriate.
The plaintiff alleges that these disclosures were highly offensive and unreasonable. The defendants move to strike this count because the plaintiff has failed to allege the required elements of the cause of action.
In their argument to strike this counts the defendants' rely onLaFontaine v. Family Drug Stores, Inc., 33 Conn. Sup. 66, 360 A.2d 899
(1976). LaFontaine predates Goodrich and all subsequent pronouncements by this state's appellate courts regarding the right to privacy.
In Sargeant v. Serrani, supra, 866 F. Sup. 667-668, the court applied a three-part test to determine whether a reasonable person would consider CT Page 8350 information to be a private fact: (1) whether the plaintiff voluntarily revealed the information or actively sought to keep it private; (2) whether the matter involves some social value, the nature of which is decided by the fact finder; and (3) whether the information is of any relevance to any ongoing public debate.
The plaintiff in this case did not voluntarily reveal the contents of the conversations in issue. Furthermore, an attempt was made to keep the information private: paragraph 22 of the revised complaint alleges that one month before the tapes and transcripts were mailed to the media, a request was made through plaintiffs counsel to have all tapes and transcripts returned to the plaintiff. The second and third aspects of the private fact test involve factual determinations regarding the content as to whether these particular conversations address matters of public concern.
The court finds that the plaintiff has alleged sufficient facts to substantiate a claim based on publication given to private life. The motion to strike Count XXX is denied.
Bishop, J.